# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00192-CV

### In re Harris Corporation, Harris IT Services Corporation, Digital Display Networks, Inc., and 7-Eleven Inc.

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## M E M O R A N D U M   O P I N I O N

In this original proceeding, relators Harris Corporation; Harris IT Services Corporation; Digital Display Networks, Inc.; and 7-Eleven Inc. (collectively the "Harris Defendants") seek a writ of mandamus from this Court directing the trial court to dismiss real-party-in-interest Intincifi L.L.C.'s suit. The Harris Defendants assert that the trial court erred in denying their motion to dismiss Intincifi's suit based on a valid and enforceable forum-selection clause which, according to the Harris Defendants, requires that this action be brought in Orlando, Florida. We conditionally grant the Harris Defendants' mandamus petition.

## BACKGROUND

On December 14, 2010, the parties entered into a signed contract (the "December Contract"). Under the terms of the December Contract, Intincifi agreed to provide (1) "project/program management services"; (2) "value engineering services"; and (3) "oversight of installation services" in connection with a digital advertising project for 7-Eleven Stores (the "Project"). The contract specifies that the Harris Defendants would pay Intincifi $150 per hour for

these services, with total payments not to exceed $100,000. Furthermore, the contract states that it would be effective for three months, but the parties could renegotiate to extend the term of the contract, and that the terms of the contract would "remain in effect and continue to control during any good faith negotiations." The December Contract contains a merger clause stating that it is the "entire agreement of the parties with respect to the Services," and also contains the relevant forum-selection clause:

> The parties agree that the exclusive venue for any action related to the dispute or interpretation of this Agreement shall be in the courts with the appropriate jurisdiction located in Orlando, Florida, and each party irrevocably submits to the jurisdiction of each such court in any such action and waives any objection it may now or hereafter have to venue or personal jurisdiction in each such court.

Intincifi continued working on the Project and received payment under the terms of the December Contract from December 2010 through July 2011. According to Intincifi, the parties intended the December Contract to be a temporary measure, and throughout the parties' negotiations the Harris Defendants continued to assure Intincifi that they had a "gentlemen's agreement" to formalize the parties' October 2010 "Gain Share Agreement." According to Intincifi, the proposed terms of the Gain Share Agreement provided that Intincifi would be paid $24,000 per month—constituting a "greatly reduced hourly rate" representing one full-time employee being paid $150 per hour—for the same services on the Project. In addition, Intincifi would receive "gain share" of the "measurable cost reductions" it achieved in implementing the Project, effectively paying Intincifi a percentage of the amount it saved the Harris Defendants when compared to their projected costs.

2

By mid-June, Intincifi claims it began to suspect that the Harris Defendants were reneging on their promise to formalize the Gain Share Agreement. Intincifi brought this underlying suit, asserting claims for breach of the Gain Share Agreement, promissory estoppel, quantum meruit, unjust enrichment, fraud, fraudulent inducement, and negligent misrepresentation, as well as declaratory relief stating that the Gain Share Agreement is a valid and enforceable contract. Intincifi seeks damages in an amount equal to what it would have received under the Gain Share Agreement.

The Harris Defendants filed a motion to dismiss Intincifi's suit, asserting that the forum-selection clause within the December Contract requires that Intincifi's claims be brought in Florida. In its response, Intincifi asserts that its claims are solely for damages under the Gain Share Agreement and therefore do not implicate the forum-selection clause within the December Contract. Alternatively, Intincifi asserts that the forum-selection clause should not be enforced because the December Contract generally, and the merger clause specifically, was procured through fraud. Following some discovery and a hearing on the motion, the trial court denied the Harris Defendants' motion to dismiss. The Harris Defendants filed this mandamus petition, seeking a writ from this Court instructing the trial court to dismiss Intincifi's suit in accordance with the forum-selection clause.

**STANDARD OF REVIEW**

To obtain mandamus relief, a relator must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Southwestern Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004)). A clear abuse of discretion occurs when the trial court's decision is so arbitrary and

3

capricious that it amounts to clear error. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). "A trial court abuses its discretion when it fails to properly interpret or apply a forum-selection clause." *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (orig. proceeding). When a trial court errs in failing to enforce a valid forum-selection clause, mandamus relief is appropriate. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 231 (Tex. 2008) (citing *In re AutoNation, Inc.*, 228 S.W.3d 663, 667–68 (Tex. 2007)).

## DISCUSSION

This Court has applied a two-step analysis for determining the applicability and enforceability of forum-selection clauses. *See Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 262 (Tex. App.—Austin 2010, pet. dism'd) (describing shifting burden of proof when analyzing forum-selection clauses); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (describing shifting burden of proof when analyzing arbitration clauses). In the first step, the Harris Defendants—as the parties seeking to enforce the forum-selection clause—have the initial burden of establishing that the parties entered into an agreement to an exclusive forum and that the scope of the forum-selection agreement applies to the claims involved. *Young*, 336 S.W.3d at 262. In determining the scope of the forum-selection clause, we turn to principles of contract interpretation, with the primary objective of ascertaining and giving effect to the parties' intentions. *Id.* (citing *Southwest Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324–25 (Tex. App.—Austin 1999, pet. denied)). In examining whether claims are within the scope of a forum-selection clause, courts engage in a "common-sense examination of the claims and the forum-selection clauses to

4

determine if the clause covers the claims." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009) (orig. proceeding). "[W]hether claims seek a direct benefit from a contract turns on the substance of the claim, not artful pleading . . . . [A] claim is brought in contract if liability arises from the contract, while a claim is brought in tort if liability is derived from other general obligations imposed by law." *Id.*

Assuming the Harris Defendants make this initial showing, the burden shifts to Intincifi—as the party resisting application of the forum-selection clause—to clearly show that the forum-selection clause should not be enforced because (1) enforcement of the clause would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *Young*, 336 S.W.3d at 262. "Forum-selection clauses are generally enforceable and presumptively valid," and the burden of proof is heavy for the party seeking to avoid enforcement of a forum-selection clause. *In re Laibe Corp.*, 307 S.W.3d 314, 315–17 (Tex. 2010) (orig. proceeding). With these principles in mind, we turn to the applicability of the forum-selection clause in this case.

**Does the forum-selection clause apply to Intincifi's claims?**

In their mandamus petition, the Harris Defendants assert that all of Intincifi's claims concern payment for services it provided on the Project, the December Contract covers Intincifi's payment for the Project, and therefore all of Intincifi's claims are "action[s] related to the dispute or interpretation of" the December Contract that fall within the scope of the forum-selection clause.

5

In response, Intincifi does not dispute the existence of a forum selection clause.[1] Rather, Intincifi argues that its claims concern payment under the terms of the Gain Share Agreement and therefore are not within the scope of the December Contract's forum-selection clause.

The facts and arguments in this case are very similar to those in *In re Laibe Corp.*, 307 S.W.3d at 315–17. In that case, the defendant sold the plaintiff a drilling rig, and the initial invoice, which contained terms and conditions for the sale of the rig, did not contain a forum-selection clause. *Id.* at 315–16. A subsequent written contract for the sale contained both a merger clause and a forum-selection clause, stating that "'ALL DISPUTES ARISING UNDER THIS CONTRACT'" would be brought in Indiana. *Id.* The plaintiff subsequently sued the defendant in Texas for alleged defects in the rig. When the defendant moved to dismiss the claim pursuant to the forum-selection clause, the plaintiff asserted that the sale of the rig was the subject of the initial invoice that did not contain a forum-selection clause, and thus enforcement of the forum-selection clause in the subsequent contract would be unjust. *Id.* at 316–17.

The Texas Supreme Court rejected this argument, noting that the subsequent contract contained a merger clause that "indicates that the invoice on which [the plaintiff] relies is not the final or binding agreement of the parties." *Id.* at 317. The court further explained that "[e]ven if, for some reason, the merger clause is disregarded for purposes of [the plaintiff's] argument, a contract can consist of more than one document" and therefore a court could consider both the initial

---

[1] Intincifi's argument that the forum-selection clause was procured through fraud is relevant, if at all, to the enforceability of the forum-selection clause, not to whether the parties otherwise entered into an agreement containing the clause. *See Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 262 (Tex. App.—Austin 2010, pet. dism'd) (distinguishing between applicability and enforceability of forum-selection clause).

invoice and subsequent contract as "'part of a single, unified instrument.'" *Id.* (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)). Given that both documents pertained to the same transaction, the court concluded that the forum-selection clause contained within the second contract was enforceable regardless of whether that contract was the parties' entire agreement. *Id.*; *see also Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 688–690 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (concluding suit for breach of confidentiality agreement was within scope of consulting agreement's forum-selection clause).

Similarly in this case, Intincifi asserts that its claims arise from the original Gain Share Agreement—which did not contain a forum-selection clause—whereas the Harris Defendants assert that, by virtue of the merger clause, Intincifi is entitled only to the compensation outlined in the December Contract. We express no opinion about the merits of these arguments or the validity of the merger clause within the December Contract. However, like the documents in *In re Laibe,* the Gain Share Agreement and the December Contract in this case pertain to the same subject-matter and transaction— Intincifi's payment for services relating to the Project. *See* 307 S.W.3d at 315–17. Thus, when a factfinder ultimately determines what the terms of the parties' agreement are, the factfinder could construe the Gain Share Agreement and the December Contract as part of a single agreement between the parties. Therefore, even if, for some reason, we could disregard the December Contract's merger clause, the forum-selection clause must be enforced as part of an agreement relating to Intincifi's payment for services provided on the Project, which is the underlying subject of this suit. *See id.* at 317.

7

All of Intincifi's claims concern the amount of compensation owed for its services on the Project. Given that the December Contract purportedly identifies Intincifi's compensation for these services, Intincifi's contractual claims necessarily require a determination of the scope, duration, and validity of the December Contract. Thus, Intincifi's contractual claims are "action[s] related to the dispute or interpretation" of the December Contract falling within the broad scope of its forum-selection clause.

Furthermore, Intincifi's non-contractual claims—including quantum meruit, unjust enrichment, fraud, fraudulent inducement, and negligent misrepresentation—fall within the broad scope of the forum-selection clause. This Court, interpreting a similarly worded forum-selection clause, held that where the clause stated that "'any and all disputes arising under or relating to this [shareholder agreement] and/or the sale, purchase or holding of the [company's shares]'" must be brought in Ontario, the clause encompassed the shareholders' fraud, fiduciary-duty, and security-law claims. *Young*, 336 S.W.3d at 263. We concluded that all of the shareholders' claims fell within the broad scope of the above clause because each claim related to the sale or purchase of stock, which was the subject-matter of the shareholder agreement. *Id.*; *see also Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 799 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (concluding forum-selection clause encompassed claim for fraud in the inducement and DTPA claims); *My Café-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866–67 (Tex. App.—Dallas 2003, no pet.) ("Pleading alternative noncontractual theories of recovery will not alone avoid a forum selection clause if those alternative claims arise out of the contractual relations and implicate the contract's terms."). Because Intincifi's non-contractual claims relate to the parties' contractual relations with regard to

the Project and implicate the terms of the December Contract, the claims fall within the scope of the forum-selection clause. *See Young*, 336 S.W.3d at 263; *Clark*, 192 S.W.3d at 799.

Therefore, we conclude that all of Intincifi's claims are actions related to the dispute or interpretation of the December Contract, and thus are within the scope of its forum-selection clause. Having concluded that the forum-selection clause applies to all of Intincifi's claims, we next determine whether Intincifi has met its burden of establishing that the forum-selection clause should not be enforced.

**Should the forum-selection clause be enforced?**

In the trial court, and again in its response to this mandamus proceeding, Intincifi asserts that even if its claims are within the scope of the December Contract's forum-selection clause, the December Contract was obtained through fraud and negligent misrepresentations, and therefore the Harris Defendants cannot rely on the forum-selection clause. Intincifi appears to assert two distinct theories of why the Harris Defendants' alleged fraud should preclude enforcement of the forum-selection clause. First, Intincifi asserts that because the December Contract as a whole was obtained through fraud, the contract and its forum-selection clause are void or voidable. Second, Intincifi argues that because the merger clause within the December Contract was obtained through fraud, it is void and the December Contract should not be treated as the final iteration of the parties' agreement.

This Court, consistent with federal courts and our sister courts of appeals, has held that a party seeking to avoid enforcement of a forum-selection clause based on fraud must show that the forum-selection clause *itself* was procured through fraud or overreaching. *See Young*, 336 S.W.3d

9

at 266–67 (citing *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 2009); *Clark*, 192 S.W.3d at 800). A party cannot avoid enforcement of a forum-selection clause by asserting that the contract containing the clause was procured through fraud. *Id.* As one court explained, "[t]o allow a party to avoid its obligations under a presumptively valid contract with a prima facie valid forum-selection clause simply because the party might carry its burden at trial would give the party an end run around the" presumption that the forum-selection clause is enforceable. *Clark*, 192 S.W.3d at 800.

In this case, Intincifi conducted significant initial discovery— including depositions of the Harris Defendants' executives—in which Intincifi had the opportunity to develop its claim that the forum-selection clause should not be enforced. Despite this discovery, there is nothing in the record to indicate that the forum-selection clause itself was obtained through fraud. Although Intincifi claims that the trial court had a sufficient basis to conclude otherwise, Intincifi relies on the argument that it "would never have signed the [December Contract] but for [the Harris Defendants'] repeated representations—false representations, it turns out—that the parties had a gentlemen's agreement" that the Gain Share Agreement would be enforced. This argument is ultimately an assertion that the December Contract as a whole is void, which cannot serve to avoid enforcement of the forum-selection clause. *See Young*, 336 S.W.3d at 266–67.

Similarly, Intincifi's argument that the merger clause was procured through fraud—and therefore the December Contract is not a final or exclusive iteration of the parties' agreement—cannot serve to avoid enforcement of the forum-selection clause. As discussed above, even if the trial court could rule at this stage that the merger clause was void, Intincifi's claims would still be actions involving a dispute or interpretation of the December Contract that are within

10

the scope of the forum-selection clause. *See In re Laibe Corp.*, 307 S.W.3d at 317. Furthermore, Intincifi's claim that the merger clause was fraudulently procured does not demonstrate that the forum-selection clause was fraudulently procured, and thus does not affect the enforceability of the forum-selection clause. *See Young*, 336 S.W.3d at 266–67. Therefore, Intincifi has failed to clearly show that the forum-selection clause should not be enforced based on fraud or overreaching.[2] *See id.* at 267.

Having concluded that Intincifi's claims are within the scope of the forum-selection clause and Intincifi has failed to clearly show that the forum-selection clause should not be enforced, we conclude that the trial court clearly abused its discretion in denying the Harris Defendants' motion to dismiss. Accordingly, we conditionally grant the Harris Defendants' petition for writ of mandamus, order the trial court to withdraw its order denying the Harris Defendants' motion to dismiss, and order the trial court to dismiss this suit based on the forum-selection clause within twenty days of our opinion. If the trial court fails to comply, we will issue the writ.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Filed:   June 4, 2013

---

[2] Intincifi also claims that enforcement of the forum-selection clause would be unreasonable and unjust. However, Intincifi does not cite to any statute, case law, or legal authority to support this position. Accordingly, we consider this issue to be waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

11